UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CRYSTAL F. SCOTT,
Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

Case No. 1:16-cv-697
Dlott, J.
Litkovitz, M.J.

REPORT AND
RECOMMENDATION

Plaintiff Crystal F. Scott brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for disability insurance benefits (DIB). This matter is before the Court on the Commissioner's memorandum in support of the motion to remand for further proceedings (Doc. 14) and plaintiff's reply memorandum seeking a reversal for an immediate award of benefits (Doc. 15).

## I. Procedural Background of Administrative Proceedings

Plaintiff filed an application for disability insurance benefits (DIB) in May 2011, alleging disability beginning on June 30, 2010. Plaintiff's insured status for DIB expired on December 31, 2015. Two administrative hearings were held on plaintiff's application for benefits.

Following the first hearing, Administrative Law Judge (ALJ) Irma Flottman issued a decision denying plaintiff's claim for benefits. (Tr. 199-218). Plaintiff appealed ALJ Flottman's decision to the Appeals Council, which remanded plaintiff's case to the ALJ for resolution of the following issues: (1) further evaluation of the treating source opinion of Dr. Jonathan Rosenthal, M.D., plaintiff's treating psychiatrist, and (2) further development and evaluation of the evidence

related to plaintiff's arthritis of the right leg and any resulting work-related limitations. (Tr. 219-223). The Appeals Council found that ALJ Flottman had not adequately evaluated Dr. Rosenthal's treating source opinion and the limitations the treating psychiatrist assessed. (Tr. 220). Further, the Appeals Council found that while the ALJ cited a May 23, 2012 x-ray that "revealed arthritic changes, marked narrowing of the joint space, and hypertrophic osteophytes in the right knee," the ALJ did not assess the severity of plaintiff's right knee impairment, for which she required treatment. (*Id.*). The Appeals Council therefore ordered the ALJ on remand to do the following: (1) obtain additional evidence concerning plaintiff's impairments including, if warranted and available, consultative mental status examinations and medical source statements about what plaintiff could still do despite her impairments in order "to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512-1513)"; (2) further consider plaintiff's maximum residual functional capacity [RFC] during the entire period at issue with supporting rationale and specific references to evidence in the record supporting the assessed limitations, and evaluate the treating source opinion of Dr. Rosenthal as part of that analysis; and (3) obtain supplemental evidence from a VE if warranted. (Tr. 221-22).

The second hearing on plaintiff's application was held by a different ALJ, Gregory Kenyon. (Tr. 107-138). ALJ Kenyon again denied plaintiff's DIB application. (Tr. 82-106). Plaintiff appealed to the Appeals Council, which denied plaintiff's request for review. (Tr. 1-7).

Plaintiff then filed this civil action challenging the Commissioner's final decision denying her application for DIB. (Doc. 3). In response to plaintiff's statement of errors (Doc. 9), the Commissioner filed a unilateral motion for voluntary remand under sentence four of 42 U.S.C. § 405(g) and requested a remand for further administrative proceedings and a new

decision by an ALJ. (Doc. 10). Plaintiff opposed the motion for voluntary remand, seeking an immediate award of benefits based on overwhelming evidence of disability. (Doc. 11). In reply, the Commissioner conceded that ALJ Kenyon's decision "was flawed and cannot be defended"; however, the Commissioner argued that a remand for an award of benefits was not warranted because "not all essential factual issues have been resolved." (Doc. 12 at 1-2).

On January 10, 2017, the Court denied the Commissioner's motion for voluntary remand. (Doc. 13). Because the Commissioner concedes that the ALJ's decision cannot be defended, the only issue in this appeal is whether this matter should be reversed and remanded for rehearing or reversed for an immediate award of benefits. 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991). Accordingly, the Court ordered the parties to file supplemental briefs on this remaining issue. This matter is now ripe for resolution.

## II. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her

> physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

## III. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] met the insured status requirements of the Social Security Act through December 31, 2015.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since June 30, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: degenerative joint disease of the knees, obstructive sleep apnea, obesity, depression, and an anxiety disorder (20 CFR 404.1520(c)).

4

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work[1] as defined in 20 CFR 404.1567(b) subject to the following limitations: (1) occasional crouching, crawling, kneeling, stooping, balancing, and climbing of ramps and stairs; (2) no climbing of ladders, ropes or scaffolds; (3) no work around hazards, such as unprotected heights or dangerous machinery; (4) no driving of automotive equipment; (5) no concentrated exposure to temperature extremes or respiratory irritants; (6) limited to performing unskilled, simple, routine, repetitive tasks; (7) occasional contact with coworkers and supervisors; (8) no public contact; (9) no jobs involving teamwork or tandem tasks; (10) no jobs involving close over the shoulder supervision; (11) no fast paced production work or jobs involving strict production quotas; and (12) limited to performing jobs in a relatively static work environment in which there is very little, if any, change in the job duties or the work routine from one day to the next.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[2]

7. The [plaintiff] was born [in] . . . 1960 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The [plaintiff] subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569 and 404.1569(a)).[3]

---

[1] Social Security regulations state that light work requires the ability to do a "good deal" of walking and standing. 20 C.F.R. § 404.1567. Social Security Ruling 83-10 states that light work requires walking at least six of eight hours in a workday.

[2] Plaintiff's past relevant work was as a customer service clerk, a cashier, and a dry cleaner helper, all performed at the light level of exertion.

5

      11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from November 8, 2011, through the date of [the ALJ's] decision (20 CFR 404.1520(f)).

(Tr. 87-97).

### IV. This matter should be reversed and remanded for further administrative proceedings.

As indicated, the Commissioner concedes that the ALJ's decision denying plaintiff's DIB application "was flawed and cannot be defended." (Doc. 12). Therefore, the only issue in this case is whether this matter should be reversed and remanded for an outright award of benefits as of plaintiff's alleged onset date of June 30, 2010 or for further administrative proceedings.

In a case where the final decision of the Commissioner is not supported by substantial evidence, the Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991). Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec. of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec. of H.H.S.*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994).

---

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of jobs at the light exertional level such as mail clerk (50,000 jobs nationally), routing clerk (68,000 jobs nationally), and collator operator (30,000 jobs nationally). (Tr. 98).

6

Plaintiff requests a reversal and remand for an immediate award of benefits as of her alleged onset date of June 30, 2010 for two reasons. First, plaintiff alleges that "the evidence of record overwhelmingly demonstrates that [plaintiff's] physical impairments, particularly her documented bilateral knee arthritis in combination with her exogenous obesity, limited her to a sedentary level of exertion during this entire period of time." (Doc. 15 at 2). Plaintiff asserts that under the Commissioner's medical-vocational guidelines for sedentary work for individuals "closely approaching advanced age," plaintiff would be considered disabled as of December 31, 2010, the date she turned 50 years old. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, Rule 201.12. Plaintiff further alleges that a non-mechanical application of the grid rules warrants a finding of disability as of her alleged onset date of June 30, 2010, which was a mere six months before the date she turned 50. (Doc. 15, citing 20 C.F.R. § 404.1563).

Second, plaintiff alleges that the actions of ALJ Kenyon and the Appeals Council warrant a remand for an immediate award of benefits. Plaintiff contends that this matter was remanded to the ALJ by the Appeals Council for the specific issue of "further development and evaluation" of plaintiff's right knee impairment, based on the May 2012 x-ray evidence showing arthritic changes, marked narrowing of the joint space, and hypertrophic osteophytes in the right knee. (Tr. 221). She alleges that on remand, ALJ Kenyon failed to comply with the Appeals Council's directive and simply relied on the state agency reviewers' decisions from 2011, which obviously did not include the 2012 evidence upon which the Appeals Council based its remand. Then, inexplicably, the Appeals Council without any analysis affirmed ALJ Kenyon's decision without acknowledging the ALJ's failure to comply with the Appeals Council's previous directive. Plaintiff essentially argues that it is fundamentally unfair to remand this case for yet another administrative hearing where the Appeals Council chose to forego an opportunity to rectify ALJ Kenyon's erroneous decision two and one-half years ago, and plaintiff's application has been pending for more than five years.

7

In determining whether this matter should be remanded for an immediate award of benefits as of plaintiff's alleged onset date of June 30, 2010, the Court must determine whether the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or whether the proof of disability as of June 30, 2010 is overwhelming. *Faucher*, 17 F.3d at 176. Plaintiff acknowledges that she received very little medical treatment for her knees between June 30, 2010, her alleged onset date, and ALJ Kenyon's decision in early 2015, which she attributes to a lack of health insurance. (Tr. 130, 150). Plaintiff cites to two emergency department visits and x-ray evidence during the relevant time period showing severe arthritis of both the left and the right knees. (Tr. 629, 663). Plaintiff also cites to evidence she submitted to the Appeals Council subsequent to ALJ Kenyon's decision from Dr. Jerry Magone and Atrium Medical Center. Plaintiff was examined by Dr. Magone, an orthopedist, on April 13, 2015. Dr. Magone reviewed x-rays which demonstrated "severe end stage osteoarthritis" of both knees. (Tr. 73). Plaintiff's weight had increased to 374 pounds at that time. (*Id.*). Plaintiff subsequently underwent a total right knee replacement in June 2015. (Tr. 8-68).

Although the additional reports plaintiff submitted to the Appeals Council from Dr. Magone and the Atrium Medical Center strongly support a finding of a disability onset date prior to ALJ Kenyon's January 2015 decision, the Court may not consider this evidence in determining the remedy in this case. Where the Appeals Council denies review, as in this case, it is the ALJ's decision that is considered the "final" decision of the Commissioner. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). *See also Smith v. Comm'r of Soc. Sec.*, No. 2:12-cv-12160, 2013 WL 5243448, at *4 (E.D. Mich. Sept. 18, 2013). In conducting its review of the Commissioner's decision, the district court cannot consider evidence that was not presented to the ALJ. *Elliott v. Apfel*, 28 F. App'x 420, 423 (6th Cir. 2002) (citing *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton*, 2 F.3d at 696). This is so even if the Appeals Council considered newly

8

presented evidence in deciding to deny review. *Id.* at 424. Thus, the only evidence the Court may consider in determining whether plaintiff's left and right knee impairments limited her to sedentary work and support plaintiff's request for an immediate award of benefits is the x-ray evidence from 2011 and 2012 and the other evidence of record that was presented to the ALJ.

Records from plaintiff's March 12, 2011 emergency department visit show that plaintiff complained of diffuse pain to both knees. On examination, there was no redness, swelling, red streaks or joint effusion of the knees. Plaintiff had full range of motion "with discomfort" and no gross joint instability. (Tr. 626). X-rays of plaintiff's left knee showed "tricompartmental osteoarthritis of the left knee, severe in the medial compartment." (Tr. 629). Plaintiff's weight at that time was recorded as 300 pounds, with her height listed as five foot five inches. (Tr. 626). The emergency room physician interpreted the x-ray findings as showing "decreased joint space medially with some degenerative changes. . . ." (Tr. 626). In reviewing the x-ray and emergency department report as part of their respective July 2011 and December 2011 record reviews, the state agency doctors determined that plaintiff retained the ability to perform light work activity. (Tr. 178-79, 191-93). There is no other medical opinion or evidence predating the March 2011 evidence to shed light on plaintiff's left knee condition as of her alleged onset date. The Court cannot say that the March 2011 evidence overwhelmingly establishes plaintiff's left knee impairment was disabling as of June 30, 2010, especially in view of the medical opinion evidence suggesting plaintiff could perform light work at that time.

X-rays of plaintiff's right knee obtained during an emergency room visit on May 22, 2012 showed "arthritic changes . . . in the medial compartment of the right knee with marked narrowing of the joint space and hypertrophic osteophytes." (Tr. 663). Plaintiff's weight on this date was not recorded. Emergency department records indicate that plaintiff experienced a fall; she complained of mild to moderate pain in the anterior soft tissue of the right leg; and she was ambulatory with

9

some discomfort. (Tr. 659). On exam, she had "some indications of minor injury or trauma" and had full function, full mobility, intact sensation, intact capillary refill, and no indications of neurovascular or neuromuscular deficits. (Tr. 661). X-rays showed no acute fractures or bony abnormalities, though known chronic osteoarthritis was visible in her right knee. (Tr. 663). She was discharged home with some temporary medications and a referral to orthopedics "use as needed." (Tr. 661). On discharge, plaintiff was ambulatory and did not require crutches, a walker, or a wheelchair. (*Id.*). As was the case in March 2011, there is no medical evidence relating plaintiff's right knee impairment back to June 30, 2010, plaintiff's alleged onset date.

Although the 2012 evidence of plaintiff's right knee impairment, coupled with the 2011 x-ray evidence of the left knee and plaintiff's obesity, strongly suggests that plaintiff may have been limited to sedentary work at this time, there is insufficient evidence to conclude that her bilateral knee condition related back to her alleged onset date of June 30, 2010, nearly two years earlier. The Court cannot conclude that the evidence of plaintiff's knee impairment and obesity is overwhelming evidence of disability so as to justify an immediate award of benefits as of June 30, 2010.

Plaintiff nevertheless argues that common sense dictates that a "massively obese woman in her 50s with significant arthritis in both knees couldn't reasonably be expected to be on her feet standing or walking at least 6 hours out of 8 required of light work." (Doc. 15 at 6). While this may be a reasonable conclusion to draw from the evidence, plaintiff's argument begs the question at the heart of this case: *when* did plaintiff's bilateral knee impairment limit her to sedentary work? As there is no record evidence of bilateral knee arthritis until May 2012, the Court cannot conclude that the record overwhelmingly supports a finding that plaintiff was limited to sedentary work on June 30, 2010.

The other evidence of record fails to support a finding of disability dating back to June 30, 2010. The record shows that plaintiff suffers from COPD, but that condition was not diagnosed until 2014. (Tr. 689, 697, 769). Plaintiff was employed when she was first diagnosed with sleep apnea, some six years before her alleged onset date in 2004, and the medical records do not reference sleep apnea again until September 2010. (Tr. 525, 564-66). In September 2010, plaintiff was advised to resume use of her CPAP machine after plaintiff reported she had not used the machine for three years. (Tr. 564-66). The next report of sleep apnea in the record is not until 2014. (Tr. 697). On the basis of a psychological consultative examination performed in August 2011 (Tr. 632-37), state agency psychologists assessed plaintiff as capable of work involving simple tasks with other non-work preclusive limitations. (Tr.179-81, 193-96). Plaintiff did not begin mental health treatment until 2012 (Tr. 640) and there is no indication in the medical assessment her treating psychiatrist made in February 2013 that the limitations from plaintiff's mental impairments related back to June 2010. (Tr. 675-76). Finally, plaintiff stopped working in June 2010 because of her impending relocation to another state and not because of her impairments. (Tr. 145). *Cf.* Social Security Ruling 83-20, 1983 WL 31249, at *2 ("the day the impairment caused the individual to stop work is frequently of great significance" in determining the date of onset). The evidence of plaintiff's other impairments does not provide overwhelming proof of disability as of plaintiff's alleged onset date of June 30, 2010.

Next, plaintiff contends the actions of ALJ Kenyon and the Appeals Council warrant a reversal for an immediate award of benefits in this case. Plaintiff alleges that despite the Appeals Council's initial remand to the ALJ for further development and evaluation of the May 2012 evidence related to plaintiff's arthritis of the right leg and any resulting work-related limitations (Tr. 219-223), ALJ Kenyon failed to adhere to that directive. Instead, ALJ Kenyon relied on the 2011 opinions of the state agency physicians to conclude plaintiff could perform light work

11

activity, even though those physicians did not have the benefit of the May 2012 x-ray evidence. (Tr. 95). On subsequent review, the Appeals Council declined to review ALJ Kenyon's opinion. Plaintiff argues that "the Appeals Council now wants the case to come back" some two and one-half years after it abdicated its responsibility to ensure ALJ Kenyon on remand complied with its original directive. Plaintiff alleges that there is no serious question that at some point her bilateral knee impairments and her obesity rendered her unable to perform the six hours of standing per day needed for light work, and the only issue would be when she was limited to sedentary work.

The Court has concluded in some cases where an application has been pending for a number of years that there is no just reason to further delay resolution of a disability application by requiring additional administrative proceedings. However, those cases involve proof of disability that is strong and opposing evidence that is lacking in substance. *See, e.g., Campbell v. Colvin*, No. 3:15cv363, 2016 WL 6581336, at *3 (S.D. Ohio Nov. 7, 2016), *report and recommendation adopted,* 2016 WL 7496736 (S.D. Ohio Dec. 30, 2016) (citing *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 730 (6th Cir. 2014) (remanding for benefits after 2 remands and 3 administrative hearings and finding, "In light of the extensive opinions of treating physicians as to the severity of Gentry's psoriasis and psoriatic arthritis, we conclude that substantial evidence on the record as a whole supports a finding of total disability.")). Though plaintiff's application has been pending for almost six years, that reason alone does not justify a remand for an immediate award of benefits absent strong proof that plaintiff was limited to sedentary work as of June 30, 2010. For the reasons described above, proof of disability as of the alleged disability onset date is not particularly strong. Though the evidence of plaintiff's physical and mental impairments strongly suggests that plaintiff may have become disabled sometime before ALJ Kenyon's January 2015 decision, under the

date of disability are factual questions that must be determined by the Commissioner in the first instance.[4]

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Date: 3/20/17

Karen L. Litkovitz
United States Magistrate Judge

---

[4] Plaintiff notes that she has now been found disabled as of June 1, 2015 based on a subsequently filed application. (Doc. 15, Ex. A). She requests that any remand decision by this Court expressly state that such determination is not to be reviewed or re-opened by the agency on remand. Plaintiff has not presented, and the Court is not aware, of any legal authority permitting the Court to order this remedy.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CRYSTAL F. SCOTT,
Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

Case No. 1:16-cv-697
Dlott, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).